# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-26-00148-CV

---

## In re SummerMoon Holdings LLC

---

## ORIGINAL PROCEEDING FROM TRAVIS COUNTY

---

## D I S S E N T I N G   O P I N I O N

I respectfully dissent.  Because I would conclude that Cleveland Krist's dual representation of SummerMoon Holdings and one of its former officers does not require Cleveland Krist to take conflicting positions or a position that risks harming one of its two clients in this derivative suit brought by minority member CTen, and that even if it did, CTen has not shown that it will suffer prejudice absent disqualification, I would conditionally grant mandamus relief.

"Disqualification of counsel is a severe remedy that can result in significant expense to clients, disrupt the orderly progress of litigation, and deprive a party of the counsel of its choice." *In re Murrin Bros. 1885, Ltd.*, 603 S.W.3d 53, 57 (Tex. 2019) (orig. proceeding). While courts may look to disciplinary rules to "provide helpful guidance" and "suggest the relevant considerations" when deciding disqualification issues, the rules do not determine whether counsel is disqualified. *Id.*  "Ultimately, a court 'must consider all the facts and circumstances to determine whether the interests of justice require disqualification.'" *Id.* (quoting *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) (orig. proceeding)).  Even if a movant establishes a violation of disciplinary rules, the movant must also show that it will suffer prejudice if the disqualification is not granted.  *Id.*

And the trial court must consider the extent to which the nonmovant will suffer prejudice from the disqualification of its counsel, including the financial burden of obtaining substitute counsel that is not already familiar with the case, the denial of the nonmovant's right to be represented by counsel of its choice, and "the potential for tactical abuse by the party seeking disqualification." *Id.* (quoting *In re RSR Corp.*, 568 S.W.3d 663, 666 (Tex. 2019) (orig. proceeding) (per curiam)).

Cleveland Krist represents SummerMoon Holdings' position in this suit, which is directed by its majority member, Coffee Unplugged. In representing SummerMoon Holdings against CTen's direct and derivative claims, Cleveland Krist represents the majority member's position regarding the company's strategy, operations, and growth plans, as carried out by its officers, including its former CEO, Sarah McKown. In its motion for disqualification, CTen argued that Cleveland Krist violated Texas Disciplinary Rules of Professional Conduct 1.06(a) and (b), maintaining that SummerMoon Holdings' interests are "materially and directly adverse to McKown's interests" based on the claims CTen asserts, both directly and derivatively, against McKown. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.06(a) (prohibiting lawyers from "represent[ing] opposing parties to the same litigation"), *id.* R. 1.06(b) (prohibiting lawyers from representing client if such representation "involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm").

In my view, CTen's claims against McKown do not compel Cleveland Krist to "espouse adverse positions" in its dual representation of SummerMoon Holdings and McKown. SummerMoon Holdings' position in this derivative suit—at least its majority member's position— is consistent with McKown's. That logically follows, since CTen's lawsuit generally takes issue with the Coffee Unplugged-ownership faction's business direction as carried out by the company's

2

officers. *See In re Murrin Bros.*, 603 S.W.3d at 59 (noting "practical approach" of some courts is "reasoning that the interests of the company and its controlling officers or directors are often aligned, and separate counsel is not necessary unless a divergence of those interests arise"). In other words, there is no factual dispute about the circumstances leading to this lawsuit—only SummerMoon Holdings' two ownership factions' differing opinions about which business decisions should or should not have been made and the effect of those decisions on SummerMoon Holdings' business. CTen's pleadings and briefing acknowledge the alignment of McKown's and SummerMoon Holdings' defense, in which—at least until the merits of the derivative claims are assessed—SummerMoon Holdings' position is directed by its majority member, Coffee Unplugged. *See id.* at 58 ("The resistance of the company's usual decisionmakers to the minority shareholder's claims is what causes derivative litigation in the first place."). And CTen has not alleged that McKown's purported misconduct deviated from the direction of the Coffee Unplugged-controlled board—only that she took actions consistent with that direction to which CTen objects. Thus, I cannot conclude that Cleveland Krist's dual representation of SummerMoon Holdings and McKown violates the disciplinary rules by requiring it to take conflicting positions or taking a position that risks harming one of its clients.

Even if CTen had established a violation of disciplinary rules, mandamus relief would be appropriate for another reason: because CTen has not shown that it will suffer prejudice if the disqualification is not granted. *See id.* at 57. "Because disqualification is a severe remedy that can 'result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of choice,'" the movant must also demonstrate that the attorney's conduct caused actual prejudice requiring disqualification before disqualifying an attorney based on a violation of the disciplinary rules. *In re Zaidi*, --- S.W.3d ----, ----, No. 24-0245, at *3 (Tex.

3

Apr. 10, 2026) (orig. proceeding) (quoting *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding)).  In its motion, CTen argued that "CTen would be prejudiced in the jury trial by a perception that [SummerMoon Holdings] is opposed to the relief sought by CTen, when in reality the relief sought by CTen is sought for, and in the best interests of, [SummerMoon Holdings]."  But this argument again merely highlights the fundamental nature of the derivative suit, in which "both sides will claim to be aligned with the company and acting on its behalf," and "the side with which the company is truly aligned can be determined only through resolution of the merits of each side's respective claims." *In re Heiser*, 711 S.W.3d 775, 782 (Tex. App.—Austin 2025, orig. proceeding).  And it underscores the parties' disagreement on the derivative claims' merits, as CTen's claims reflect its ownership faction's dissatisfaction with the business decisions regarding SummerMoon Holdings' governance, which it carried out through its officers and directors.  In the context of a disqualification motion, this is insufficient to establish prejudice:  "A jury is unlikely to have any problem identifying the two ownership groups and their counsel.  It is unclear why a jury would need to be told anything at all about the question of which lawyers have authority to represent the company itself." *In re Murrin Bros.*, 603 S.W.3d at 60.

Further, CTen argued that absent disqualification, SummerMoon Holdings "would continue to be deprived of independent counsel," contending that if SummerMoon Holdings "had independent counsel, it may well have otherwise vigorously pursued claims against McKown." But this argument again assumes that CTen will prevail on the merits of its derivative suit. Whether SummerMoon Holdings is represented by Cleveland Krist or other counsel, there is no indication from the record in this proceeding that SummerMoon Holdings' position on the merits would change, particularly given that Coffee Unplugged and the other individual defendants in this lawsuit are represented by separate counsel and have opposed CTen's motion to disqualify.

4

In its response to this mandamus petition, CTen further argues that prejudice to SummerMoon Holdings is "presumed" based on an "irrebuttable presumption" that Cleveland Krist shared confidential information with McKown. But for that to be true, CTen would have had to show that Cleveland Krist possessed confidential information belonging to SummerMoon Holdings that prejudiced CTen. *See id.* ("No showing was made that [the law firm] possessed confidential information belonging to [the company] that prejudiced the [derivative plaintiff] and could not have otherwise been obtained from the [other defendant]."). It did not. Instead, by citing cases not involving derivative claims, CTen generally refers to the presumption that Cleveland Krist has shared SummerMoon Holdings' confidential information with McKown since her March 2025 resignation and contends that SummerMoon Holdings has been presumably prejudiced by this disclosure. But because CTen cannot establish prejudice for disqualification purposes by pointing to purported prejudice to SummerMoon Holdings, this argument is inapposite. *See id.*

Disqualification is especially harsh here given the prejudice that SummerMoon Holdings faces once Cleveland Krist is disqualified, particularly in terms of its "financial burden of obtaining substitute counsel that is not already familiar with the case." *Id.* at 57. One of CTen's members testified that he estimated that SummerMoon Holdings has paid Cleveland Krist over $300,000 for its defense work in this litigation since October 2024. This proceeding and its harsh outcome for SummerMoon Holdings highlights the potential for disqualification to be used as a strategic "dilatory trial tactic" and encourages derivative-suit plaintiffs to sue individual defendants to increase litigation expenses, deprive the company of its chosen counsel, or both. *See id.*

"Disqualification is a severe remedy," and "courts must adhere to an exacting standard when considering motions to disqualify[.]" *Spears v. Fourth Ct. of Appeals*,

5

797 S.W.2d 654, 656 (Tex. 1990). Because in my view, CTen did not establish with specificity a violation of the disciplinary rules and show that it will suffer prejudice if disqualification is not granted, I do not think that CTen met its burden to establish its entitlement to disqualify SummerMoon Holdings' counsel. *See id.*; *In re Murrin Bros.*, 603 S.W.3d at 57. I would therefore conclude that the trial court clearly abused its discretion by granting CTen's motion to disqualify Cleveland Krist as SummerMoon Holdings' counsel and that SummerMoon Holdings has no adequate remedy by appeal. Since I would conditionally grant mandamus relief, I respectfully dissent.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Filed: May 8, 2026

6